## Somach's License

*J. Alfred Wilner*, for petitioner.
*Frederic G. Weir*, for respondent.

MUSMANNO, J., June 10, 1938.—An application was filed with the Pennsylvania Liquor Control Board on February 7, 1938, by Theodore Somach for a restaurant liquor license for premises at no. 1802 Crafton Boulevard, in the City of Pittsburgh, Allegheny County, Pa. Subsequently on March 30, 1938, the application was refused by the board without a hearing because the establishment was located less than 300 feet from the Crafton High School and the superintendent of the Crafton schools and the board of school directors had protested the issuance of the license. A hearing was held on April 22, 1938, and on April 30, 1938, the Liquor Control Board again refused the issuance of a license. An appeal was taken to the Court of Quarter Sessions of Allegheny County and a hearing had on May 25, 1938. The testimony at this hearing would tend to establish the following facts:

That by measuring from the door of the Somach establishment to the pavement on the opposite side of the street, thence along the street to a point directly in front of the entrance to the high school building, and then along the walk to the building, the distance is slightly over 300 feet. By approaching the same entrance to the high school building by a diagonal walk at the corner of the building, the distance is less than 300 feet.

It is argued by appellant, inter alia, that the distance between his establishment and the school building should be measured, not on a straight line, but along such a route as would normally be traversed by a pedestrian traveling between the two points. He claims that it should be measured not "as a crow flies," but as a man walks.

We are here called upon to construe that part of section 403 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended June 16, 1937, P. L. 1762, which reads as follows:

"Provided, however, That, in the case of any new license or the transfer of any license to a new location, the board may, in its discretion, grant or refuse such new

license or transfer if such place, proposed to be licensed, is within three hundred feet of any church, hospital, charitable institution, school or public playground".

It seems fundamental to us that in measuring distances, there can be only one method employed—and that is straight linear measure. Geographical measurements have no regard for streets, curbs, or walking lanes. They are direct, undeviating, and absolute. Distances referred to in statutes can only be measured in the same way. Mathematical distance should never, and can never, be a subject for debate. Three hundred feet can not contract or stretch according to the view of the particular person doing the measuring. It is not a matter of deciding which street or route to follow. Lineal measurements ignore streets, as they must nullify mountains, rivers, and any other intervening topography.

As a straight line is the shortest distance between two termini, 300 feet must inevitably be 300 feet over the shortest cosmographic route—and that means a straight line.

There is a popular notion that the most direct route is that one which is expressed by the phrase, "as a crow flies." This is a fallacious notion. A crow does not always fly straight. In fact, he rarely does. Indeed, he is a rather unreliable bird. When he sets out on a journey he seldom proceeds with bullet precision to his destination. He must alight from time to time to sample worms, caterpillars, and grasshoppers; he can never soar directly over a cornfield, he must circle over it several times and then swoop down to dine on newly-planted corn, not infrequently glutting himself to the extent that his navigational sense of direction is considerably dulled.

The crow is wary and cautious, which are points in his favor, self-preservation being the first law of nature, but his caution is often carried to a foolish extreme. He is, with reason, afraid of the farmer who stands ready with a shotgun to give him a warm welcome for uproot-

ing his corn field, but in his (the crow's) fright, he cannot tell the difference between a farmer and a scarecrow. Thus he will always fly pell-mell away from the latter, which in its shapeless bundle of rags looks no more like a farmer than an Eskimo harpooning a fish.

To use "as a crow flies" as a simile for bullet directness is incorrect. "As a crow flies", is a phrase that should be eliminated from the lexicon of accurate speech and writing. A crow sent out on a direction and distance-marking expedition would come back with a report whose accuracy could only be conjectured at, after making allowances and deduction for the time and effort expended by him in the pursuit of grasshoppers, in the visits to cornfields, and in the fluttering flights away from scarecrows.

We do not intend by this opinion to proscribe the crow. He is really not a bad bird and can (and does) give plenty of "caws" to show his friendliness. We only say that he is not accurate and cannot be utilized, in the interpretation of a liquor statute, as a surveyor to draw a straight line. If a bird must be used in charting a direct course to a liquor establishment, it would appear that the swallow would more instinctively find the direct route than a crow. However, we are firmly of the opinion that the nomenclature of birds has no place in legal language, not dealing strictly with an ornithological subject. So far as we are concerned, "as a crow flies" to suggest a straight line is here banned, both in the popular and juristic use. Nor would we suggest for a substitute, "as an airplane flies," or "as a bullet is projected." It is our opinion that in describing a straight line it is quite sufficient simply to say "in a straight line".

Euclid and Einstein are sufficient authorities for what we have here stated.

We thus decide that since the Somach establishment is within 300 feet, on a straight line, of the Crafton High School, the application for a liquor license must be refused.